Sewall, J.
This is an action upon a policy of insurance, dated May 19th, 1801, underwritten by the defendant, to insure for the plaintiff the sum of 1000 dollars upon one half of the schooner Betsey, her cargo and freight, from Grenada to Wiscasset; vessel valued at 4000 dollars, and half the insurance being on the vessel, one quarter on the cargo, and one quarter on the freight.
The plaintiff demands a total loss, and avers that on the 15th of April, 1801, the said schooner was, by violent gales, &c., stranded upon the Island of Bermudas, was there wrecked and totally lost, and with her cargo and freight became of no value ; of which no tice was given, and proof made November 10th, 1801.
After a trial upon the general issue, a verdict was found for the plaintiff; and the case is brought before us by exceptions, filed for the defendant, to the proceedings at the trial.
By these exceptions several questions are made, which have been fully argued, and have been considered by three of the justices of this Court, the chief justice and Justice Parker not sitting in the case. In the opinion which I shall now deliver, Justice Sedgwick and Justice Thatcher concur with me.
The first and principal question, considered in the argument, respects the constructive effect of a memorandum inserted in the policy in these words: “ This risk is against a total loss only.' *387 What did the parties intend by this restriction ? and may their intentions be explained by parol evidence *of [472 ] a conversation between the insurance broker and the agent for the plaintiff, when the policy was effected ? The evidence at the trial is also referred to us; and whether a total loss is proved, in the sense of the parties to this policy is the third question to be decided.
The memorandum in question is a restriction, to some purpose, in every event insured against; and the insurer is in no case liable, unless a total loss is proved. Words precisely similar have not been employed in any policy, which has become the subject of a judicial decision; none was cited in the argument, or has been found since. But what is a total loss in the sense of this memorandum may be understood, we apprehend, by considering the import and effect of exceptions and warranties against particular averages and partial losses. A memorandum to this purpose, respecting corn and certain articles perishable by their own nature, or liable to particular injuries at sea, is inserted in almost all policies, and is so much a part of the usual form of insurance, as to obtain the name of the common memorandum. This, it is said, renders the policy, as to the excepted articles, an insurance against that sort of misfortune, which is considered as amounting to a total loss; and in the cases thus provided for, the insurance is against a total loss only. (17) It seems, therefore, to be but a change of terms, to say that an insurance against a total loss only, or taking the risk of a total loss only, is equivalent to an insurance, with an exception of partial or average loss, or with a warranty against them on the part of the insured ; and by considering the effect of these, as settled by several judicial decisions, we shall determine, upon legal authority, the constructive effect of the memorandum in question in the case at bar. With this view, I shall state a decision made by Lord Hardwicke, in a case of insurance, before the common memorandum was introduced ; for the purpose of comparing it with several subsequent decisions m cases otherwise similar, where the effect of the common memorandum was fully considered.
* In the case of Boyfield vs. Brown, (18) the insur- [*473] anee was upon a cargo of corn, without any memorandum against average or partial losses. The vessel arrived with her cargo at the port of destination; but the corn was in a damaged state, and so deteriorated as to sell for less than half the amount oi the freight due upon it. This case was thought to be within the usage of deducting the freight, when the salvage exceeds it; and *388 Lord Hardwicke directed a verdict for a total loss, because the freight exceeded the salvage.
In Mason vs. Skurray, (19) decided by Lord Mansfield, the insurance being upon a cargo of, pease, was limited by the common memorandum. The pease arrived, but so much damaged in the. voyage as to produce only about one fourth of the amount of the freight; yet the assured could not recover as for a total loss; and the decision turned upon the general import of the exception, and proof of the established usage and practice, from which Lord Mansfield deduced the principle, that if the specific thing come to the port of delivery, the underwriter is not liable.
In a subsequent case, of Cocking vs. Frazer, (20) the decision went upon the same principle, or, rather, as Marshall observes, it was carried farther. There, upon an insurance of ship and goods, with the usual memorandum, the cargo being fish, a part was thrown overboard for the preservation of the ship and cargo in the course of the voyage, and a part arrived at Lisbon, and was there, upon a survey, determined to be of no value, through sea-damage ; and in consequence the ship did not pursue her voyage to her place of destination. The insurer was holden liable for the general average upon the fish thrown overboard, but not for the loss upon the fish which arrived at Lisbon, and which might, as it appears, have been carried to the port of destination, notwithstanding the sea-damage. As to articles within the memorandum, the insurer was holden to have engaged against a total loss. Now, a total loss of the thing insured, Lord Mansfield observes, is the absolute destruction of it by the wreck of the ship.
[*474] * This principle was applied, in these decisions, to
cases of perishable articles, excepted by the common memorandum. But in the case of Manning vs. Newnham, (21) the loss of the voyage insured, when the subject-matter of the insurance specifically remained, was, under the circumstances of the case, and after some hesitation, adjudged a total loss within the intent of the parties to a policy containing a warranty against particular average. The insurance, in that case, was made upon a ship, her cargo and freight; the ship, freight, and goods, warranted free of particular average, for a voyage from Tortola to London. The ship, having sailed upon the voyage insured, put back in distress, and, upon a survey, was declared unable to proceed to sea with her cargo upon a London voyage ; and it appeared that she could not be repaired in any of the English islands in the West Indies; and any other *389 resort for the purpose was, if not impracticable, very hazardous, the French and English being then at war. The cargo, although not damaged, was landed and sold ; and the assured recovered as for a total loss, upon the ground that the .voyage was totally lost and gone, by perils insured against. (22)
To reconcile this decision with the principle which governed in the decisions before cited, it must be understood that an interruption by a peril insured against, when in the event, and by unavoidable consequences, the voyage insured is thereby entirely and inevitably defeated and lost, is a total loss within the meaning of a policy containing a warranty against particular average, and with the same effect upon the insurance, as the absolute destruction of the thing insured, by the wreck of the ship.
The general principle, then, in cases arising under policies containing exceptions of particular average, or warranties against partial losses, is, that the insurer is liable as for a total loss, whenever, by a peril insured against, the subject-matter of the insurance is absolutely destroyed; or whenever, if we yield to the authority of Manning vs. * Newnham, the voyage insured is entirely [ * 475 ] and inevitably defeated and lost.
When the policy is expressed, as in the case at bar, to be upon the risk of a total loss only, the same principles must, I think, govern the decision. As to the distinction contended for by the defendant’s counsel, and stated in the exceptions, of a constructively total, and a physically total loss, intending by the latter a loss with out any salvage, it is not warranted by any of the text writers upon the subject of marine insurance. A total loss with salvage is a case frequently mentioned and described; and it is indeed difficult to conceive of any event or peril, provided against by the ordinary forms of insurance, which does not admit the supposition of some salvage, remotely possible, at the least: as in the case of a ship foundered or burnt at sea, every possible chance of salvage is by no means excluded. But in the technical sense of the words “ total loss,” and for every beneficial purpose, in which a contract of in surance can be employed, a ship foundered and burnt at sea, or wrecked and broken upon the land, so as to be past relief or repair, is specifically, and as a vessel totally destroyed ; and such an event is a total loss ; — and when it has happened from a peril insured against, it is a loss for which the underwriter is liable, notwithstanding salvage, and a very considerable salvage, remaining; and notwithstanding any restriction the policy may contain, as being *390 expressed to be an insurance against a total loss only, or as containing an exception or warranty, on the part of the assured, against average or partial losses.
The case of a total loss of the voyage, when the ship and sub ject-matter of the insurance specifically remain, as in the case of Manning vs. Netvnham, it is perhaps more difficult to admit within the same principle of construction. But upon the principle adopted in that decision, the voyage is to be'inevitably and entirely .defeated ; and the total loss does not depend upon the voluntary dereliction of the voyage by the assured, either as not [ *476 ] worth pursuing, or *as being without funds, or any other circumstance depending upon the will or management of the assured or his agent, or upon any election he can exercise, by an abandonment or otherwise, for the purpose of rendering a loss constructively total, a loss partial in its nature. (23)
In examining the case at bar, according to the result of these decisions and principles, and considering the plaintiff holden to prove a loss, total in its nature, but not requiring him to prove cir cumstances that exclude every remnant or expectation of salvage,— the question, then, upon the exceptions will be, whether the vessel of the plaintiff was specifically destroyed, or the voyage insured was inevitably defeated, by the events stated in the evidence, and to De understood as proved, in this question.
According to the evidence referred to us, the vessel, although injured in her hull by stranding, was relieved and carried into a port where repairs were practicable, and to be obtained at less than half the amount of her estimated value. The cargo was saved entire, or with very little damage, except the expenses of salvage. And it does not appear, even if the vessel insured had been irreparable, that another carrier for the cargo might not have been procured. Under these circumstances, the agent of the assured proceeded to strip the vessel, to sell the hull and cargo, and to abandon the voyage. The only circumstance urged or contemplated, as rendering this course necessary, was the want of funds to pay for salvage and repairs; and we cannot but take notice, that this necessity was supposed to operate an inevitable total loss, at a port within a moderate distance from the owner’s residence. The intelligence which seems to have given occasion to the insurance made by the plaintiff, more than thirty days after the loss averred had taken place, was brought in fifteen days from the neighborhood of Bermudas to Newcastle, in the neighborhood of Wiscasset; and *391 it is said that the same voyage is sometimes, and not unfrequently, performed in a much shorter time.
*If the damage suffered by the vessel in her stranding [ * 477 ] was not a shipwreck, or an irretrievable injury in its own nature, specifically destructive to the vessel, all the other circumstances of the loss proved were partial in their nature, or a business of choice and management by the agent of the assured, for whose conduct he is responsible. Perhaps, upon the facts found, it is not perfectly clear what was the extent of the injury which the vessel insured had sustained ; but if afloat, or if it was practicable to put her afloat, and if she was capable of being repaired at any expense, it was not a total loss within the meaning and intent of the policy relied on in this case. It is stated that the vessel was not worth repairing, and that it would have cost 1500 dollars to repair her; which proves that the subject-matter of the insurance was not specifically destroyed, and that the voyage was not entirely and inevitably defeated. Whether the injury sustained, and the expenses of salvage, rendered the voyage of no value, and not worth pursuing, is not a question to be considered, where the policy is restricted to the case of a total loss. That case is only proved by showing the destruction of the thing specifically, and in that sense totally; or the inevitable loss of the voyage insured upon it, if, yielding to the authority of Manning vs. Newnham, the principle can be carried to that extent, by a construction the most favorable that can be admitted for the assured in the case at bar.
The construction we have adopted, of the words employed in the memorandum in question, renders a decision unnecessary, as to the evidence offered and rejected at the trial. Upon this part of the case, it may be sufficient to observe, that the written words of the parties is the best evidence of their agreement; and paroi evidence is not admissible to disannul or substantially to vary a written contract. (24), (25) A usage may be proved by paroi evidence, and, when proved, it may give a peculiar effect and meaning to the words of a contract necessarily referring to the usage proved. (26) But in the case at bar, the evidence offered and rejected at the trial was not of a usage.
* As to the question made upon the evidence of an [ * 478 ] abandonment attempted to be proved in this case, it seems very clear, upon the facts stated, that, supposing this to be a *392 case in which an abandonment is essential, and that, independent o this restriction upon his insurance, the assured was entitled to aban don under the circumstances proved, that the assured did not elect to abandon within any reasonable time after the events at Bermudas and the state of his vessel and cargo was known ; and that he never did actually make an offer of abandoning to his underwriters, before this action was commenced. His agent was never authorized to make this offer, and when the plaintiff went himself to the office, besides that it was then too late, if an election to abandon were essential to his demand, he used no words, which can, by any construction, be considered as an offer to abandon. He stated his loss, and the supposed amount of salvage in the hands of his captain. But if a loss had been proved in this case, total in its own nature and in the sense of the parties to this contract, limited as it is by the memorandum which has been considered, a statement of the salvage remaining is all that would be requisite, in my opinion, to the claim of the assured to a total loss ; that is, to enable him to recover the sum insured, deducting the amount of salvage received by the assured or his agent. In this opinion, however, my brethren do not concur with me. (27) And according to my own view of the subject, if the verdict taken in this case finds the whole sum insured by the defendant, without any deduction for salvage, it is in that respect erroneous, if in no other.
But without finally deciding upon any objection of that kind, and entirely upon the ground, that a total loss, within the meaning oi the policy in question, was not proved, the verdict must be set aside, and a new trial is granted ; this being the only order which the Court can make, in the actual state of the proceedings in this cause It is with great reluctance that we thus postpone a [ * 479 ] final * decision upon this insurance and supposed loss.† But we are all of the opinion, that' a total loss, in the sense of the parties to the policy, from the events averred in the plaintiff’s declaration, is not proved, nor provable, by the evidence referred to us; if, indeed, it is provable by any evidence that can be adduced for the plaintiff, considering the facts which he admits to be proved ; particularly that the vessel might have been repaired at less than half her estimated value; from which it must be concluded, that she was not specifically destroyed, or rendered irreparable ; and if it is necessary to go so far, that the voyage was not *393 absolutely lost; and without evidence to that effect, we think there can be no proof of a total loss, either of the vessel, cargo, or freight, in any sense which the parties to the policy in question can bf understood to have intended by their contract.

 Marsh. 132.

 2 Stra. 1065.

 Park, 116. — Marshall, 143.

 Park, 114. — Marshall, 144

 Park, 169. —Marshall, 505.

 [Parry vs. Aberdeen, 9 B. & Cres. 411.— Gernon vs. Roy. Ex. Ass. Co.— 6 Taunt. 383.— Woldworth vs. Wise, 7 B. & Cr. 744. — Marcardier vs. Ches. Ins. Co. 8 Cranch, 39 —Ed.]

 [Anderson vs. Wallis, 2 M. & S. 240. — 2 M. & S. 371. — Wilson vs. Roy. Ex. Ins. Co , 2 Camp. 626.— Thomson vs. Roy. Ex. Ins. Co., 16 East, 214. —Ed.]

 3 Wils. 276, Meres & Al. vs. Ansell & Al.

 [New York Gaslight Co. vs. Mechanics Ins. Co., 2 Hall, 108. — Mellen & Nesmith vs. Nat. Ins. Co., 1 Hall, 452. — Levy & Al. vs. Merrill & Al., 4 Greenl. 180. — Parks vs. Gen. Int. Ins. Co., 5 Pick. 34. — Astor vs. Un. Ins. Co., 7 Cowen, 202. — Ed.]

 [Fowler vs. Etna Insurance Company, 7 Wend. 270. — Ed.]

 [Petapsco Ins. Co. vs. Southgate, 5 Peters, 604. — Parmenter vs. Todhunter 1 Camp. 541. — Pierce vs Ocean Ins. Co., 18 Pick. 83. — Houston vs. Thornton, Holt, 243. — Badger vs. Ocean Ins. Co., 23 Pick. 347. — Ed.]

 This was said at the bar to be the third verdict that the plaintiff had obtained in this action.