POOLE and others *against* THE PROTECTION INSURANCE COMPANY.

The insertion of the common *memorandum* in a policy of insurance, excepting the articles therein specified from particular average, does not vary the rule by which, when a loss on such articles happens, from shipwreck or by damage to the vessel, it is to be deemed a partial or a total loss.

To subject the insurers for the loss of goods specified in the *memorandum* clause, it is not necessary that there should be either an actual destruction of every part of the goods insured, so as no longer physically to exist in specie, nor that there should be a total extinction of their value; but it is sufficient, if by reason of a peril insured against, the voyage is arrested, and the goods neither come to the hands of the owners, nor reach their port of destination, nor are capable of being forwarded.

Therefore, where insurance against loss or damage, by perils of the seas, was effected, by a policy containing the usual *memorandum*, on 280 hides, (a *memorandum* article) from *Mobile* to *New-York ;* in the course of the voyage, the vessel was wrecked, and the hides lay submerged several days; when the crews of some wrecking vessels in the vicinity succeeded in saving 89 of the hides, but the remainder were lost with the vessel; these having been taken, by the wreckers, to *Nassau,* putrefaction commenced in them, which rendered them unfit for immediate exportation, and they were there sold at auction for the benefit of all concerned, and the net proceeds, after paying salvage and incidental expenses, remitted to the owners of the vessel, for those entitled thereto; and the insured thereupon abandoned, and claimed for a total loss; there being no evidence to shew, that any thing was omitted, by the master and crew, which it was in their power to do, for the recovery and preservation of the property insured; nor that the hides saved were in such a state as to allow of their being forwarded, in the form of hides, to their port of destination; nor that, if such had been their condition, any vessel could be procured in which they might have been so forwarded; nor that, if this had been done, the expenses would not have exceeded their value, so that nothing could be realized, by the owners, when they should be received by them; and the adventure, therefore, not being worth prosecuting, but substantially destroyed; it was held, that the insurers were liable as for a total loss of the whole property insured.

*It seems,* that if there be a total loss in fact of part of the goods insured, being *memorandum* articles, under such circumstances as not to constitute a total loss of the subject of insurance, the insured cannot recover for such part actually lost.

THIS was an action upon a policy of insurance, made on the 14th of *February*, 1837, for the premium of 400 dollars, on 280 hides belonging to the plaintiffs, from *Mobile* to *New-York*, on board the brig *Gen. Warren*, and insuring the plaintiffs against the perils of the seas and other risks not necessary to be mentioned. The policy contained a stipulation that the assurers should not be liable for any partial loss on certain

enumerated articles, among which were skins and hides, but that the owners of such enumerated articles should recover on a general average. (*a*)

The following were the material facts in the case, as agreed by the parties. The vessel sailed from *Mobile,* on the 24th of *February,* 1837, with the hides on board, and in the course of her voyage, on the 27th of that month, was wrecked on the *Ridley Rocks* near *Nassau,* in the *Bahama* islands. The hides were submerged in the wreck, and so continued until the 6th of *March,* when, the crew having got on shore, with some provisions and sails from the wreck, several wrecking vessels came to their assistance, whose crew commenced saving the cargo, and succeeded in saving 89 hides, the remainder never being recovered. The hides saved were in bad condition, and reshipped, by the wreckers, in one of their vessels, for *Nassau,* where, on the 13th of *March,* the hides, in consequence of their having been in water several days, being diminished in value, and having a very bad smell, which indicated incipient putrefaction, and thus rendered unfit for immediate exportation, were sold at auction for the benefit of all concerned. Their net proceeds, after paying salvage and port charges, were 39 dollars, 84 cents ; which sum was remitted to the owners of the brig for whom it might concern. The hides not thus recovered remained with the vessel, and

(*a*) This stipulation, taking the place of what is generally called " the *memorandum*" in marine policies, was expressed in these words : " Provided that the assured shall not be liable for any loss on live stock dying on deck, unless drowned, nor for any loss on live stock landed alive ; nor for any partial loss on live stock, unless the same amount to ten per cent. upon the whole aggregate value of each kind of stock separately ; nor for any partial loss on bar and sheet iron, iron wire, tin plates, salt, grain of all kinds, tobacco, fruit of all kinds, cheese, dry fish, vegetables and roots, hempen yarn, cotton bagging, pleasure carriages, household furniture, *skins and hides,* leather, harness, musical instruments, looking glasses, *and all articles that are perishable  n their own nature ;* nor for any partial loss on books and paper, hemp or nails, unless the loss amount to twenty per cent. on the whole value thereof; nor for any partial loss on sugar, flax, flaxseed, and bread, unless the loss amount to seven per cent. on the whole aggregate value of such articles ; nor for any partial loss on coffee in bags or bulk, and pepper in bags or bulk, unless the loss amount to ten per cent. on the whole aggregate value of such articles ; nor for any partial loss on other goods, or on the vessel or freight, unless it amount to five per cent. exclusive, in each case, of all charges and expenses incurred for the purpose of ascertaining and proving the loss ; but the owners of such goods shall recover on a general average."

were lost. On the 16th of *March*, the master and crew of the brig arrived at *Nassau*, when a protest was made, which, with a notice of abandonment, was forwarded to the defendants, on the 12th of *July*, 1837, who, on the 17th of that month, replied, refusing to pay for the hides on the ground that the loss was not total. The brig became a total wreck, a part of her materials only being saved.

The case was reserved for the consideration and advice of this court.

*R. S. Baldwin*, for the plaintiffs, contended, 1. That the defendants were clearly liable for the amount of the salvage and charges ; since if the loss is not a total one, so as to render them liable for it, as such, under the policy, they have been saved from that liability, by the service for which the salvage was paid to the wreckers. It was a service for their benefit, and not for the benefit of the assured. 2 *Phil. Ins.* 344. *Benecke* 380. 7 *Cranch* 418. But

2. That the defendants are liable for the whole amount. The object of the *memorandum* is, to protect insurers from liability for partial injury to perishable articles, which, from their nature, are exposed to deterioration from inherent decay or otherwise. On principle, where there has been a total loss of a specific part of a cargo so insured, there is no reason why the insurers should not be liable for the loss, as much as if the articles had not been perishable ; and so are the *English* decisions. *Davy* & al. v. *Milford*, 15 *East* 559. See *Cologan* & al. v. *London Assurance*, 5 *Mau. & Selw.* 447. 456. *Wadsworth* v. *Pacific Insurance Company*, 4 *Wend.* 33. 39. In *Connecticut*, there has been no decision upon the point ; and our courts are at liberty to adopt that construction which seems most reasonable.

3. That the special circumstances of this case furnish a distinct ground of recovery by the plaintiffs as for a total loss. Although the *memorandum* excludes a claim for a *constructive* total loss on account of damage to the article, if it reaches its port of destination in specie, or is received by the assured at an intermediate port, however deteriorated by sea-damage ; yet in the case of a loss, by ship-wreck, or damage to the ship, there is no mode of distinguishing a partial from a total loss, whether the goods are *memorandum* articles or not, or wheth-

*New-Haven, July, 1840.*

Poole
*v.*
The Protection Insurance Co.

*New-Haven,*
*July, 1840.*

Poole
*v.*
The Protection
Insurance Co.

er they are insured with or without exception of partial loss. The principle is well stated, by Lord *Abinger,* C. B., in the case of *Roux* v. *Salvador,* 3 *Bing. N. C.* 266. in the *Exchequer Chamber,* and is settled by the authority of that case. He says : " If the goods once damaged, by the perils of the sea, and necessarily landed before the termination of the voyage, are, by reason of that damage, in such a state, though the species be not utterly destroyed, that they cannot with safety be re-shipped, in the same or any other vessel;" "if, though imperishable, they are in the hands of strangers, not under the controul of the assured ; if, by any circumstance over which he has no controul, they can never, or within no assignable period, be brought to their original destination ; in any of these cases, the circumstance of their existing in specie at that *forced* termination of the risk, is of no importance." The hides, which were in that case the subject of insurance, when taken out of the vessel, "became a salvage for the benefit of the party who was to sustain the loss, and were accordingly sold. Neither the assured nor the underwriters could, at that time, exercise any controul over them. It appears to us, therefore, that this was not the case of a *constructive* loss, but of an absolute total loss of the goods."

By the contract of insurance, the insurer agrees that the goods insured shall arrive at their port of destination ; and if such arrival is defeated, by a peril insured against, there is a total loss to the insured. *Dyson* & al. v. *Rowcroft,* 3 *Bos. & Pul.* 474.

In *Parry* v. *Aberdein,* 9 *Barn. & Cres.* 411. where the subject of insurance consisted of *memorandum* articles, *viz.* currants, raisins and figs ; the vessel, in the course of the voyage, encountered a violent storm, which laid her upon her beam ends, the whole of her hull being under water, except a part of her bows ; the crew deserted her, to save their lives; some fishermen, a few days afterwards, found her, and towed her into port ; the cargo having been under water eight days, was so much damaged thereby, that it would have been worth nothing at its port of destination, and it was sold at public auction, at the place where it was landed ; it was held, that the insured were entitled to recover for a total loss. The facts are very similar, and equally strong, in the case before the court.

*W. W. Ellsworth,* for the defendants, contended, 1. That a total loss of *part* of the thing insured will not, in the case of *memorandum* articles, enable the assured to recover. In support of this proposition he cited *Biays* v. *The Chesapeake Insurance Company,* 7 *Cranch* 415. 418. S. C. 1 *Wheat.* 227. n. *Humphreys* v. *Union Insurance Company,* 3 *Mason,* 429. 440. *Morean* v. *The United States Insurance Company,* 1 *Wheat.* 219. *Marcardier* v. *The Chesapeake Insurance Company,* 1 *Wheat.* 228. n. *Wadsworth* v. *The Pacific Insurance Company,* 4 *Wend.* 33. 38. & seq. *Waln* v. *Thompson,* 9 *Serg. & Rawle,* 115. *Brook* & al. v. *Louisiana Insurance Company,* 2 *Phil.* 342. *Thompson* v. *The Royal Exchange Insurance Company,* 16 *East* 214. *Hedburgh* v. *Pearson,* 7 *Taun.* 154. S. C. 2 *Marsh.* 432. The principal, if not the only case, of a contrary aspect, is *Davy* v. *Milford,* 15 *East* 559. There the question of abandonment was the main one. The case was decided in *Easter* term, 1812, and was much qualified and limited, by *Thompson* v. *The Royal Exchange Insurance Company,* decided in the succeeding *Michaelmas* term of the same year. The doctrine of *Davy* v. *Milford,* would not, in *England,* apply to a case of *hides ;* for they are purchased, shipped and dealt in as a *quantity,* by the pound ; are like a single package, like grain, apples, fish, not computed by number, but by measure or weight. The total loss of the mast or the anchor of a ship, is not the total loss of the ship ; nor is the total loss of *part* of a cargo of hides, a total loss of the cargo.

2. That a technical total loss of *memorandum* articles exists only where there is, or certainly will be, a total *destruction* of the whole subject matter, by the peril insured against. A *sale* never makes such a loss : it merely prevents what otherwise would certainly take place. Nor does the loss of the voyage. And it is this certainty, resulting from the *perils of the sea,* and not from a sale or other cause, that constitutes a total destruction. The cases of *Dyson* & al. v. *Rowcroft,* 3 *Bos. & Pul.* 474. and of *Roux* v. *Salvador,* 1 *Bing. N. C.* 526. in the *Common Pleas,* and 3 *Bing. N. C.* 266. in the *Exchequer Chamber,* go wholly on the ground of a total annihilation of the subject of insurance. To the same effect is the opinion of *Kent,* J. in *Maggrath* v. *Church,* 1 *Caines* 212, 3.

In this case, would there have been, certainly, an entire

destruction of every pound of leather ?    Would the whole, either with or without the usual and proper care, have putrefied, and thus perished ?    Can it be said, *as matter of law*, that these hides were *destroyed ?*    They would not have spoiled, if shipped at once to *New-York ;* and they would or might soon be rendered fit for shipping.    They were like barrels, that needed hooping only.

3. That the salvage in this case did not constitute the loss a total one.    In the first place, there was no salvage judicially established, or paid under any decree.    Secondly, only a *part* of the hides needed to be sold ; and a *lien* cannot make a loss. At any rate, a partial claim cannot make a total loss.

Storrs, J.    On the facts in this case the plaintiffs claim a right to recover as for a total loss of the whole hides insured.

The policy in question contains what is termed the common *memorandum* clause, by which it is stipulated, that the defendants shall not be liable for any partial loss on the articles here insured.    In order to recover, it is, therefore, necessary, that a total loss should be shewn ; and the question is, whether in this case, there has been such a total loss of the property insured, within the true meaning of a policy of this description.

That the defendants would have been liable for a total loss, under the circumstances of this case, if their liability to such total loss had not been limited, by the *memorandum* clause, we do not think can admit of a question ; nor do we understand that any doubt has been suggested, by their counsel. The property was insured from *Mobile* to *New-York*, against all damage which it might sustain, by the perils of the seas. It is admitted, that, by such peril, the vessel, in which it was insured, was shipwrecked, in the progress of her voyage, and before her arrival at the port of destination.    In consequence of such shipwreck, the hides were submerged, and so continued for several days, when, the efforts of the crew having proved unavailing for their rescue, a portion of them were recovered, by the wreckers in that vicinity, and taken by them to *Nassau*, where it was discovered, that, by the process of fermentation and putrefaction, which had commenced, they were rendered unfit for immediate exportation.    They were, therefore, sold, with the advice of the consul at that port, and

after paying from the avails the port charges and the amount
due to the salvors for recovering the property, the residue
was remitted to the owners for the benefit of whomsoever it
might concern.   The master and crew of the vessel did not
arrive at *Nassau* until some days after the property had been
sold.   On their arrival, the master made a protest, in usual
form, a copy of which, with a notice of abandonment, was, on
its arrival in this country, forwarded, by the plaintiffs, to the
defendants, and a claim made for the amount insured, which
the defendants disallowed and refused to pay.   The hides
not thus recovered remained with the vessel, and were lost;
and the vessel became a total wreck.   There is no claim that
any thing was omitted, by the master and crew, which it was
in their power to do, for the recovery and preservation of the
property insured ; nor that the hides saved were in such a
state as to allow of their being forwarded, in the form of
hides, to their port of destination ; nor is there any evidence
that, if such had been their condition, any vessel could be
procured, in which they might have been so forwarded.
And it is obvious, that if it had been practicable to arrest the
progress of decay which had commenced, and to forward
them by another vessel at hand, the expenses, which would
have attended the cure of them, and their care, storage and
transportation, in addition to the salvage and port charges,
would have been so large, in comparison with their value,
that it was doubtful whether any thing could be realized, by
the owners, when they should finally be received by them;
and the adventure, therefore, was not worth prosecuting, but
was substantially destroyed.

Under these circumstances, it cannot be necessary to cite
authorities to shew, that, by the principles applicable to ma-
rine insurance, the insurers would be liable as for a total loss
of the whole property on a policy containing no such stipula-
tion as is embraced in the common *memorandum* clause, pro-
viding for an exception in case of a partial loss only.   The
object of such a policy being to obtain, and the contract em-
braced in it to furnish, an indemnity for any loss which the
assured might sustain to the property, by its being prevented,
in consequence of the peril insured against, from reaching its
destination ; its arrival there being prevented, by such peril,
and that without any fault of the assured, or means on his

*New-Haven,*
July, 1840.

Poole
*v.*
The Protection
Insurance Co.

part to forward it, or any portion of it ; there being in fact a total loss of the property, at the time of the shipwreck, of the vessel which contained it, when its restoration, in whole or part, was placed out of the power of those with whom it was entrusted ; a liability, upon every principle applicable to contracts of insurance, attached to the insurers, to indemnify the insured as for a total loss.    And in this case, the inquiry would be unnecessary, whether the loss should be deemed an absolute total loss, or one which is termed only constructively so ; and consequently, whether it was necessary that there should be a formal abandonment to the underwriters.    In the present case, such abandonment took place at the earliest practicable period ; and to the manner of it no exception is, or probably can be, made.    Whether, in a case like this, an abandonment was indispensable to a recovery for a total loss, we should be disposed, particularly on the authority of *Roux* v. *Salvador*, 3 *Bing. N. C.* 266. and the principles there adopted, to hold, that it was not incumbent on the assured to abandon.    When the property is absolutely and totally lost to the owner, the necessity of an abandonment does not exist.    It is only where it subsists in specie, in whole or part, and there is a chance of its recovery, that it is required.    Here, it would seem, that the property insured was totally and absolutely lost to the owners, when it was submerged with the wreck, and that the liability of the insurers then attached.    Subsequent events shewed, that it was impracticable for the owners to reclaim any portion of it.    No part of it would ever have been recovered, but for the efforts of strangers, who succeeded in rescuing what was saved.    That portion was retained, by the salvors ; and was by them taken away and disposed of, without the advice or consent of the owners, or their ever having possession of the property, or any controul over it, and the proceeds in part applied to defray the claim for salvage.    And no act has taken place to indicate an intention, on the part of the insured, to avail themselves of any hope of benefit, which they might entertain from prosecuting their original adventure. That part of the property, which was recovered, was not saved to the owners.    As to them, it was, for all substantial purposes, as though it had not been rescued from the wreck. And no reason appears why the conduct of the salvors, in the recovery and subsequent disposition of the property, should

affect the right, which had accrued to the owners from the loss which had then happened, or why the loss, which was total, should be deemed to be turned into a partial loss, by the subsequent events, from which the insured could derive no benefit. We are strongly inclined to think, therefore, that if it were necessary to decide the point, this would be deemed a case, not of a constructive, but of an actual total loss; and therefore, that no abandonment was necessary. *Anderson &* al. v. *The Royal Exchange Assurance Company,* 7 *East* 38. *Parry* v. *Aberdein,* 9 *Barn. & Cres.* 411. This question, however, we do not intend to decide.

*New-Haven, July, 1840.*

Poole
*v.*
The Protection
Insurance Co.

This, therefore, being a case in which we have no doubt that the plaintiffs would be entitled to recover for a total loss of the whole property insured, if the liability of the defendants were unrestricted by the *memorandum* clause, it is necessary to inquire whether their liability is varied, by that restriction. On this subject, the defendants claim, that, in order to subject them on a policy of this description, it is necessary that the whole of the property insured should, by the peril insured against, be completely and actually destroyed, so as no longer physically to exist in specie, or at least that there should be a total extinction of its value; and that it is not sufficient to prove such a technical or constructive loss, as would, by the artificial or arbitrary rules applicable to policies by which property is not insured free from particular average, be deemed a total loss, on an abandonment.

Upon an examination of the authorities on this subject, we do not find, that, in the mode of distinguishing a partial from a total loss, by shipwreck, or by damage to the ship, there is any difference recognized, whether the property is insured with or without the exception of particular average. The elementary writers on this subject lay down the doctrine, that the insertion of the common *memorandum* does not vary the rule, by which, when a loss happens from such a cause, it is to be deemed partial or total; and in this they are supported, by the cases reported. In the case of *Roux* v. *Salvador,* before mentioned, decided in the court of *Exchequer Chamber,* where it was brought, by writ of error from the *C. P.,* where hides, insured free from particular average, arriving at an intermediate port, in a state of incipient putridity, occasioned by a leak in the ship, were there sold for one fourth of their

*New-Haven,*
*July, 1840.*

Poole
*v.*
The Protection
Insurance Co.

value, because, by the process of putrefaction, they would have been destroyed before their arrival at the port of destination, the counsel for the defendant resisted the claim for a total loss, on the ground of a distinction between goods insured with and without the exception of particular average, as to the mode of ascertaining whether the loss be total. But the court most emphatically repudiates any such distinction ; and Lord *Abinger*, in pronouncing its opinion, says : " It appears to us, that there is no ground for this assumed distinction between goods that are subject to a total loss unconditionally, and goods excepted by the *memorandum* from such a loss. The interest which the assured may have, in certain cases, to convert a partial loss into a total loss, may be a fair argument to a jury, upon a doubtful question of fact, as to the nature of the loss, or the motive for an abandonment ; and in the same view that interest has been adverted to occasionally, by judges, where the conclusions to be drawn from facts, upon a special case, or upon a motion for a new trial, were open to discussion. But there is neither authority nor principle for the distinction in point of law : whether a loss be total or partial in its nature, must depend upon general principles. The *memorandum* does not vary the rules upon which a loss shall be partial or total : it does no more than preclude the indemnity for an ascertained partial loss, except on certain conditions. It has no application whatever to a total loss, or to the principle on which a total loss is to be ascertained." The judgment in the court of *Common Pleas*, (which was reversed in the *Exchequer Chamber*,) was not rendered on the ground, that, in the mode of ascertaining whether the loss is total, there is any difference between goods insured with and without the *memorandum* clause. On the contrary, the principle on which that court held, that there could be no recovery, is entirely inconsistent with such a distinction. They came to the conclusion, in that case, that the loss was not absolutely, but only *constructively,* total ; and that, therefore, *an abandonment must be shewn*, in order to entitle the plaintiff to recover, which, not being done, judgment was rendered for the defendant. If an abandonment had been proved, there would have been no impediment to a recovery, although the loss was only constructively total. This judgment was reversed in the *Exchequer Chamber*, on the ground, that, in the opinion of

that court, the loss was to be deemed not a *constructive*, but an *absolute*, total loss of the goods; and that, therefore, no abandonment was necessary. The two courts differed only on the question whether the loss was constructively or absolutely total; and therefore, whether an abandonment should be shewn: but that a *constructive* total loss, accompanied by an abandonment, would be sufficient to entitle the plaintiff to recover, does not appear to have been doubted.

*New-Haven,*
July, 1840.

Poole
*v.*
The Protection
Insurance Co.

The same principle is supported, by the case of *Manning* v. *Newnham*, (*Marshall* 585. *Park* 260.) in which Lord *Mansfield*, in giving the opinion of the court, in favour of a total loss of goods insured free from particular average, said: "The ship has an irreparable hurt within the policy, and there is no ship to be had to take the cargo on board;" by the case of *Dyson* v. *Rowcroft*, 3 *Bos. & Pul.* 474. where a loss of the voyage by damage to the ship was held to be a total loss of the *memorandum* articles; and by the case of *Anderson* v. *Wallis*, 2 *Mau. & Selw.* 240. where Lord *Ellenborough*, speaking of the exception in the *memorandum*, said: "A total loss of the cargo may be effected, by a total and permanent incapacity of the ship to perform the voyage; that is a destruction of the contemplated adventure." And the same judge intimated a similar opinion in the cases of *Glennie* v. *The London Assurance Company*, 2 *Mau. & Selw.* 371. and *Wilson* v. *The Royal Exchange Assurance Company*, 2 *Campb.* 626. The same doctrine was expressed in *Richardson* & al. v. *The Maine Insurance Company*, 6 *Mass. Rep.* 119. by Chief Justice *Parsons*, who said, in reference to insurance with the common *memorandum*: "A cargo of *fish* may as well be abandoned, by a loss of the voyage, as a cargo of any other description;" and in *Murray* v. *Hatch*, 6 *Mass. Rep.* 473. by Judge *Sewall*. The same principle prevails in *New-York*. *Le Roy* & al. v. *Governeur*, 1 *Johns. Ca.* 226. *Maggrath* & al. v. *Church*, 1 *Caines*, 196. Indeed, on this point there appears to be an entire uniformity of decisions both in this country and in *England*. We consider it, therefore, established, that where a total loss of goods insured, with the exception of particular average, is claimed to have taken place, by reason of shipwreck, or damage to the vessel, which is the case now before us, the same rule prevails in ascertaining whether such a loss has arisen as if the policy were free from that exception.

New-Haven,
July, 1840.

Poole
v.
The Protection
Insurance Co.

The objection strongly urged, by the counsel for the defend‑ ants, that a recovery here is precluded, because a part of the property existed in specie, and was not physically destroyed, but of some value at the termination of the risk, is not, in our opinion, applicable to a case like the present, where the goods neither come to the hands of the owners, nor reach their port of destination, nor are capable of being forwarded. By the termination of the risk, in cases where, if the property exists in specie, the insurer is held to be protected, by the *memorandum* clause, is meant the termination of the risk as contemplated in the policy, the arrival of the goods at their place of destination, and not a *forced* termination of the risk, by a peril insured against, which prevents the property from being carried to its original destination.    3 *Bing. N. C.* 266.    Indeed, it is against such forced termination that it was the very object of the policy to furnish an indemnity.    If any of the hides had been brought in specie, however injured, to their port of destination, either in the vessel in which they were originally shipped, or in another procured after her shipwreck;—or if it appeared that another vessel might have been procured, by which they could have been forwarded to the port of destination, and the plaintiffs did not avail themselves of such opportunity, and notwithstanding they were damaged or depreciated, and to whatever extent, provided a prudent man, if no insurance had been effected, would have deemed it for his interest to forward the goods to their original destination;—the claim that the defendants should be exonerated from liability might be well founded.    In this case, however, by a peril provided against in the policy, the voyage is arrested; the property has received a damage, which, considering its nature, rendered it certain that, without incurring additional expense, it could not reach its original destination in specie, even if the means of re-shipping it had been at hand; and in that case, it is obvious, that it would have been, if uninsured, no object for a prudent man to forward it; if it could have been safely re-shipped and forwarded, without a change of its physical character and form, there is no proof that the means of re-shipment were to be procured; and the goods, moreover, were, and had been, since their rescue from the wreck, in the hands of strangers and beyond the controul of the owners, and indeed sold and transferred, without the knowledge of themselves or

their agents, and before their arrival at the place where they *New-Haven*, July, 1840. were to be disposed of.    No case can be found, where, under such circumstances, the loss has been held to be only partial, because a portion of the property continued to exist in specie; and on this subject we are induced to adopt the just and rational language of Lord *Abinger,* in the case of *Roux* v. *Salvador,* where he says: "The existence of the goods, or any part of them, in specie, is neither a conclusive, nor, in many cases, a material circumstance to the question whether the loss is total or partial." " If the goods, once damaged by the perils of the sea, and necessarily landed before the termination of the voyage, are, by reason of that damage, in such a state, though the species be not utterly destroyed, that they cannot, with safety, be re-shipped, in the same or any other vessel ; if it be certain that, before the termination of the original voyage, the species itself would disappear, and the goods assume a new form, losing all their original character ; if, though imperishable, they are in the hands of strangers, not under the controul of the assured ; if, by any circumstance over which he has no controul, they can never, or within no assignable period, be brought to their original destination ; in any of these cases, the circumstance of their existing in specie, at that forced termination of the risk, is of no importance. The loss is, in its nature, total to him, who has no means of recovering his goods, whether his inability arises from their annihilation, or from any other insuperable obstacle." "If a prudent man, not insured, would decline any further expense in prosecuting an adventure, the termination of which will probably never be successfully accomplished, a party insured may, for his own benefit, as well as that of the underwriter, treat the case as one of a total loss, and demand the full sum insured."

Poole\
*v.*\
The Protection\
Insurance Co.

By a reference to the cases where the existence of the property in specie has been held to defeat the claim of the owners for a total loss under the common *memorandum,* it will be found, that it was not that circumstance merely, but combined with others, on which the claim was disallowed ; as for instance, that the property, although in a damaged state, had arrived at its port of destination, and was delivered to the consignees, as in *Glennie* v. *London Assurance Company,* 2 *Mau. & Selw.* 371. ; or that it was in the hands of the own-

*New-Haven,*
July, 1840.

Poole
*v.*
The Protection
Insurance Co.

ers, and might, for any thing that appeared, have been sent to its port of destination, as in *Thompson* v. *Royal Exchange Insurance Company,* 16 *East* 214.; or that the portion of the property saved, though damaged, was restored to soundness, and might have been forwarded to its destination, but that the abandonment, if the owner ever had that right, was too late, after he had treated the property as his own, as in *Anderson* v. *Royal Exchange Assurance Company,* 7 *East* 38. See also 2 *Johns. Ca.* 289. *Marsh.* 226, 227. 232. *Park* 114. 181. 191. 3 *Caines* 108. 8 *Cranch* 39.

The present is not, however, a case of mere retardation of the voyage, or where the property ultimately reaches, or could reach, its final destination, or ever comes to the hands of its owners, and is not governed by those cases, or the principle on which they were determined.

This, therefore, being a case where, if the policy did not contain the *memorandum* clause, the plaintiff would be entitled to recover as for a total loss of the whole goods insured, and the rule by which such loss is to be ascertained not being varied, by such exception, the plaintiffs are entitled to a like recovery.

It was claimed, by the plaintiffs, in the argument, that if they could not recover for a total loss of the whole property insured, yet that they are entitled to recover as for a total loss the value of that which was in fact totally lost; and therefore, that they must have judgment for the value of the hides which were never recovered from the wreck. A decision of this point is rendered unnecessary, by the view which has been taken of the other question in the case. We would, however, remark, that the principle adopted in the case of *Davy* v. *Milford,* 15 *East,* 599. which supports this claim of the plaintiffs, does not appear to have been followed in *England,* and has been rejected, by the most respectable courts in this country. *Biays* v. *The Chesapeake Insurance Company,* 7 *Cranch* 415. 418. *Humphreys* v. *Union Insurance Company,* 3 *Mason,* 429. 435. & seq. *Waln* v. *Thompson,* 9 *Serg. & Rawle,* 115. *Morean* v. *The United States Insurance Company,* 1 *Wheat.* 219. 227. & seq. n. *Wadsworth* v. *Pacific Insurance Company,* 4 *Wend.* 33. 2 *Phill. Ins.* 342.

The superior court is advised to render judgment in favour of the plaintiffs for the whole amount insured.

In this opinion the other Judges concurred.

Judgment for plaintiffs.