## FREDERIC TUDOR *vs.* NEW ENGLAND MUTUAL MARINE INSURANCE COMPANY.

If an article insured as free from average be placed in such a condition by the perils of the sea, that in consequence of inevitable deterioration or decay, it cannot reach the port of delivery, but will necessarily be destroyed before its arrival, and the same be sold at an intermediate port, this will constitute a total loss within the true intent of the policy.

An exemption in a policy of insurance upon a cargo of ice that the company "shall not be liable for ice melting, in consequence of putting into port," does not include a loss occasioned by the melting of ice from other causes, such as the leaking of the vessel, and the necessary unlading of the ice to examine and repair the vessel in a tropical port, where the vessel is by reason of distress.

ASSUMPSIT upon a policy of insurance on a cargo of ice shipped from Boston to Calcutta, on board the brig Carthage, May 1, 1850. It was agreed that the ice was properly packed in the lower hold of the vessel, surrounded with non-conductors of heat, and that the loss took place in the manner hereafter stated in the opinion of the court, and that no part of the loss happened by stranding. An abandonment had been tendered and refused. The policy, among the usual printed clauses, contained the following memorandum clause: " Provided that the insurers shall not be liable for any partial loss on salt, grain, fish, fruit, hides, skins, or other goods that are esteemed perishable in their own nature, unless it amount to

seven per cent. on the whole aggregate value of such articles, and happen by stranding," and also a written clause in these words : " This company not liable for ice melting in consequence of putting into port." The parties agreed that the court might draw all such inferences as a jury would be warranted in drawing, and might render such judgment as the law required. The case was argued at the last March term.

*S. Bartlett,* for the plaintiff.

*W. Whiting,* for the defendants.

BIGELOW, J. Although ice is not one of the articles specifically enumerated in the memorandum clause of the policy, yet being of a perishable nature, it clearly falls within the general stipulations ; so that the defendants can be liable only for a total loss.

Upon the undisputed facts in this case, it appears that the vessel, by the perils of the sea, sprung a leak on the 23d day of May, 1850 ; that this leak increased from time to time to such an extent that, on the 14th day of June, it became necessary for the safety of the officers and crew, as well as of the vessel, to put away for a port; that the brig had a " list to starboard," which caused the leak to increase ; that on the 30th day of June she arrived at Bahia, the port of necessity ; that a survey was there had upon the vessel, from which it appeared she was badly strained, and it became absolutely necessary, in order to examine her for the purpose of ascertaining her condition, and the practicability of repairing her, so as to enable her to complete the voyage, to break bulk and take out her cargo ; that the ice was found to have settled about six feet; a portion having been melted by the sea-water, which came in contact with it, after the vessel sprung a leak ; that the ice was accordingly taken out and sold at auction for the benefit of whom it might concern, and brought a very small sum, in comparison with its estimated value at the port of delivery; that subsequently it was found necessary to raise a large sum, in order to repair the vessel and put her in a condition to continue the voyage; that the master, being unable to raise on bottomry or otherwise the necessary funds, the vessel was sold, and the voyage wholly broken up and abandoned.

Under these circumstances, it is not denied that the loss was occasioned by a peril of the sea. But the questions are, whether the loss is total under the memorandum clause; and if so, whether the written stipulation, exempting the defendants from loss occasioned by the melting of the ice in consequence of putting into port, does not operate to discharge them from liability under the policy.

Upon the first branch of this inquiry, the case seems to us to be quite too plain to admit of doubt. The rule of law is now well settled that, under an insurance upon an article free from average, if by reason of the perils insured against, it is placed in such a condition, that in consequence of inevitable deterioration or decay, it cannot be carried to the port of destination, but will necessarily, before the completion of the voyage, be wholly destroyed, and it is accordingly sold, at an intermediate port, this will constitute a total loss within the true intent and meaning of the memorandum clause. 2 Phil. on Ins. (3d ed.) § 1772; *Hugg* v. *Augusta Insurance and Banking Company*, 7 How. 595; *Roux* v. *Salvador*, 3 Bing. N. C. 266. The contract with the underwriters on a cargo for a voyage is, that the goods shall arrive at the port of destination, uninjured by the perils of the sea, and in the case of memorandum articles, that they shall then exist *in specie*, though partially injured or destroyed. If, therefore, by reason of the perils insured against, it is rendered certain in the course of the voyage, that the article insured will inevitably perish or waste away, or that on arrival, it will cease to exist, it is a total loss under the memorandum clause; and a sale of the article, at an intermediate port, in which the vessel is by reason of distress, will be justified, and the proceeds will become a salvage for the benefit of the party who is to bear the loss. In such case it is clear that the loss is total, because, if the voyage had been pursued and completed, the articles insured would have ceased to exist, and thus been totally lost, within the meaning of the policy, at the port of destination. The sale, therefore, at the intermediate port, does not at all change the rights of the parties under the policy, but saves something for the benefit of the insurers, which would otherwise be

wholly lost. *Parry* v. *Aberdein*, 9 B. & C. 411; *Poole* v. *Protection Ins. Co.* 14 Conn. 47; *Robinson* v. *Commonwealth Ins. Co.* 3 Sumner, 221; *Williams* v. *Cole*, 4 Shepl. 207. In the present case it is unnecessary to enter upon a consideration of the question, about which there is some diversity of opinion, whether, in order to constitute a total loss on memorandum articles, there must be facts from which it can be inferred there would be an absolute loss of the articles insured, so that they would not have existed *in specie* at the port of destination; or, whether it would be sufficient to show only a great deterioration in their value on arrival, or a loss above fifty per cent. of their value. The evidence in the present case leaves no room to doubt, that the ice, being necessarily removed from the hold, in which it was carefully packed in non-conducting substances, and landed at Bahia, in a tropical climate, within a short distance of the equator, could not have been reshipped. It must inevitably have perished there. The loss was, therefore, total; and the sale being fully justified by the circumstances, constitutes no bar to the plaintiff's claim. The proceeds are to be treated as salvage for the benefit of those upon whom the loss must ultimately fall.

The effect of the written clause in the policy remains to be considered. Being an exception from the risk covered by the policy, it is to be construed strictly and most strongly against the insurers. 1 Duer on Ins. 161; 1 Phil. on Ins. (3d ed.) § 1163. Taken in its most literal sense, and confining its meaning to the precise import of the words used, the clause excepts only the risk of ice " melting in consequence of putting into port," but it does not include a loss occasioned by the melting of the ice from other causes, or a combination of other causes. In the present case, the loss or melting of the ice was not caused by putting into port. It was the result in part of the leaking of the vessel before her arrival at Bahia; but the main cause was the unlading of the ice in order to examine the vessel. It is quite probable that if the vessel could have been examined and repaired without the removal of the cargo, a large portion of the ice might have remained and been transported to the port of destination. There is no evi-

47 *

dence from which its entire destruction before arrival there can be inferred. It was the exposure of the ice, after its removal from the hold, to a tropical sun, which rendered its destruction certain and total. It was not, therefore, within the terms of the exception. The purpose of the clause was, to exempt the underwriters from a loss which might arise by the melting of the ice occasioned by a retardation of the voyage, resulting from the necessity of seeking a port in case of disaster for the purpose of repairs or refitting. The vessel was bound on a long voyage, during which she must necessarily twice pass through the tropics; and there was a likelihood that she might be compelled, by the perils of the sea, to stop at a port on the way, where she might be detained a long time, and until the ice would be exposed to great waste by heat. This risk the defendants did not mean to assume; and they clearly excluded it by the written terms of the exception in the policy. But beyond this, they did not stipulate for exemption from liability. Neither party contemplated the case which actually happened, which was such injury to the vessel as to create the necessity of taking out the ice in a port in the tropics for the purpose of examining the vessel. This it was, which destroyed the ice, and rendered the loss total, and not a " melting of the ice in consequence of putting into port." The written clause, therefore, does not exempt the defendants from liability. This view is strengthened by the consideration that upon any broader construction of the exception, such as is urged by the defendants, the risks covered by the policy would be brought within a much narrower limit than can be reasonably supposed to have been intended by the parties to the contract.

*Judgment for the plaintiff for a total loss.*