# The Delaware Insurance Company *versus* Winter, Latimer & Co.

*Abandonment of insured Vessel and Cargo, Notice of.— What will justify an Abandonment.— Sale of Cargo by Master.— Memorandum clause in Policy confined to case of Partial Loss.— Contribution in payment of Bottomry Bond.— Separation of damaged from uninjured Articles, in ascertaining Loss.*

A vessel laden with perishable articles, from Baltimore to Portland, Oregon, being injured off Cape Horn, put back to Rio Janeiro, where she was surveyed, condemned, and sold, as was the cargo, which had deteriorated, and could not be shipped in whole or in part, to the port of destination. In an action against the insurance company for the insurance, it was *Held,*

1. That it was a case for abandonment as for a total constructive loss.

2. That a mere notice of abandonment, at a given time, without actual abandonment, amounts to nothing; and unless the facts of the case, under the laws of commerce, justify an abandonment, the parties are not bound by it.

3. That it was not error in the court below to refuse to charge that the facts did not justify an abandonment of the ship and cargo, because it was not shown that sea damage to the extent of fifty per cent. existed, because the facts which justify an abandonment, such as damage to vessel and cargo, inability to procure the arrival of the cargo at the port of destination, followed by survey, condemnation, and sale, are for the jury.

4. That it was not error to refuse to charge that assured were bound by the sale of the cargo by the master of the vessel; for the propriety of the sale under the circumstances was dependent on the facts, which were for the jury.

5. That whenever a cargo may, from perils which are insured against, be abandoned as for a total loss, memorandum articles stand upon the same footing as others. The memorandum clause in a policy applies to partial losses only.

6. That where the loss of vessel and cargo is total, and both belong to the same owner, the doctrine of contribution in payment of the bottomry bond does not apply, as in case of separate owners. And,

7. That the provision in a policy for ascertaining the loss by a separation of damaged from undamaged articles, applies to the case of a partial, not a total loss, constructive or absolute.

THIS was an action of covenant, brought by Winter, Latimer & Co. against the Delaware Mutual Safety Insurance Company. The case was this : On the 7th of May 1851, the defendants had insured for the plaintiffs $2500 on the schooner Orb, valued at $5500, and $5000 on a cargo valued at $17,000, on a voyage from Baltimore to Portland, Oregon. The vessel had sailed May 1st 1851, and on or about the 28th of July, was compelled by tempestuous weather to put into Rio Janeiro for repairs. To make the necessary repairs, the company borrowed $3272.14 of Maxwell, Wright & Co., of Rio, which, with marine interest, was secured by bottomry of the vessel and cargo. The Orb sailed again, and in doubling Cape Horn, encountered such severe weather that she was compelled to put back to Rio, where she arrived, October 15th 1851. At this port the vessel and cargo were surveyed, condemned and sold, except some boots and shoes, which were returned to Baltimore. The loss on the vessel was $3751.74, and on the cargo $3896.27. On the 15th of September 1851, on hearing of the first disaster, plaintiffs notified the company that they abandoned the vessel, and would look to the company for the full amount of her insurance. This was never formally accepted by defendants. On the 16th of December 1851, on hearing of the second disaster, they gave notice that they abandoned the vessel and cargo, and claimed as for a total loss under both policies.

There was no survey held and return made of the particular portions of the cargo, according to its several kinds, but the whole was surveyed as a mass, and returned generally, so damaged as to be unfit for reshipment.

The policy contained the following clauses :

First. "It is also agreed, that bar, bundle, rod, hoop, and sheet iron, wire of all kinds, tin plates, steel, madder, sumac, wickerware, and willow, manufactured or otherwise, cheese, salt, grain of all kinds, seeds of all kinds, *fruits, whether preserved or otherwise*, dry fish, vegetables and roots, prepared or otherwise, rags, hempen yarn, *bags*, cotton bagging, and other articles used for cotton bagging, pleasure carriages, *household furniture, musical instruments*, looking-glasses, skins and hides, and all articles perishable in their own nature, are warranted by the assured free from average (except general), unless it happen by stranding, and amount to twenty per cent. on the whole aggregate value of such articles ; hemp, leaf tobacco, tobacco stems, bread, Indian meal, matting, and cassia (except in boxes), free from average (unless general), under fifteen per cent. on the whole aggregate value of such articles ; coffee in bags or bulk, pepper in bags or bulk, rice, sugar, flax, and saltpetre, free from average (unless general), under seven per cent. on the whole aggregate value of such articles."

Second. " And in case of *partial loss* by sea damage to dry goods, cutlery, or other hardware, the loss shall be ascertained by a *separation of the damaged from the undamaged portion* of the damaged package or packages respectively, and the sale of the damaged portion or portions only, and not otherwise; and the same practice shall obtain as to all other merchandise, so far as practicable."

The declaration was on a marine policy as for a total loss, a total loss with abandonment, and for a partial loss of both vessel and cargo. The defendants pleaded, 1. *Non est factum.* 2. *Non infregerunt conventiones.* 3. Covenants performed. 4. Payment with leave, &c. 5. That the vessel was not by the perils and dangers of the winds and waves so broken and damaged, that it was obliged to put into the port of Rio Janeiro; that it did not thereby become necessary to repair and refit her; that it was not done afterwards at great expense; and that it was not necessary for plaintiffs or their agents, or the master, to raise money on bottomry by hypothecating the schooner and cargo, as alleged in plaintiffs' declaration. 6. That the vessel was not damaged by the perils of the sea, nor made incapable of prosecuting her voyage; nor her cargo damaged and spoiled; nor that it was impossible to forward the same; nor that it was expedient to sell the vessel and cargo at Rio; nor was the same sold there as alleged, &c. 7. That the plaintiffs were not interested in the vessel and cargo. 8. That the vessel, after sailing from Baltimore, changed and abandoned her original voyage, and proceeded on a new voyage. 9. That the vessel was unseaworthy; and 10. That the voyage was broken up by the misfeasance of plaintiffs. And on the issues thus made up, the parties went to trial.

There was evidence that storage could have been had for the cargo at Rio; and that advices in a reasonable time could have been received by the shippers and insurers in the United States; that most of the cargo was of such a character that it could have been reshipped thither, and that a part of the cargo, to wit, the boots and shoes, were sent back to Baltimore on the 7th day of June 1852, and a part of it was never accounted for. The sale of the cargo at Rio was at a great sacrifice, having been valued in the policy at $17,000, and producing only $5066.36.

The following points were submitted by the defendants' counsel to the judge who tried the cause:

1. That the plaintiffs having, by their letter of September 15th 1851, abandoned the vessel to the defendants, cannot claim for any loss thereon, resulting to the vessel after the abandonment.

2. That if the jury believe that a voyage from Rio Janeiro to San Francisco was substituted in the place of the original voyage to Portland, Oregon, there can be no recovery for either vessel or cargo, after the departure of the Orb from Rio Janeiro.

[Delaware Insurance Co. v. Winter, Latimer & Co.]

3. That under the evidence in this case, there can be no recovery on the policy for a *total loss* on the *cargo*, as the circumstances in evidence did not justify its abandonment on the 6th of December 1851.

4. That under the evidence, the plaintiffs can only claim for a partial loss on cargo.

5. There can be no *total loss* under a policy on cargo, where the same has not been damaged to over *fifty* per cent. of its value, of which there is no evidence in this case.

6. That it was the duty of the master, after his return to Rio Janeiro, to cause the goods to be stored, and advice thereof to be given to the owners and insurers.

7. That if the jury believe the cargo could have been stored at Rio, and advice been given thereof to the owners and insurers, such course should have been taken, and the sale of the cargo without such storage and notice was unjustifiable.

8. That unless a sale of the cargo, without notice, was absolutely necessary for the interests of the owners and insurers, the plaintiffs cannot recover for a total loss of cargo. And without evidence (of which there is none) of the extent of the *partial loss*, there can be no recovery for a partial loss.

9. That the master was not justified in causing the cargo to be sold at Rio, even though it was impossible to forward it to its port of destination, and it was honestly considered that such sale was beneficial to the owners, unless such sale was absolutely necessary to prevent such cargo from perishing.

10. That the plaintiffs have no claim on the defendants for alleged loss or damage to any articles usually denominated *memorandum articles*, and specified in the policy in this case.

11. That under the evidence in this case, the plaintiffs have shown no insurable interest in the cargo of the schooner Orb, and cannot therefore recover for any alleged loss thereon.

12. That unless the bottomry bond in evidence were given in order to repair the vessel, so that goods might be carried therein to their original port of destination, the said bond constituted no valid charge against the cargo.

13. If, as the evidence shows, the bottomry bond were given merely in order to raise funds to repair the vessel, and subsequently the cargo or any part of it was sold in order to discharge the said bottomry bond, the plaintiffs, professing to be owners both of the cargo and the vessel, can have no claim upon the insurers on the former for reimbursement of any loss sustained by the sale of the cargo, or any part thereof, in order to discharge the bottomry bond.

The following points were also submitted to the judge who tried the cause, by the counsel for the plaintiffs:

[Delaware Insurance Co. *v.* Winter, Latimer & Co.]

I. *Plaintiffs' right to recover on the cargo beyond the amount of their absolute ownership in it.*

1. Should the jury find that the plaintiffs, as to any portion of the cargo, purchased it for the consignees, pledging their own credit for the purchase-money, and then insured the whole in their own names, they may recover for the whole.

2. Should the jury find the plaintiffs, as to any portion of the cargo not their own, had advanced or incurred expenses for or liabilities upon it, and were in possession of it, they may, having insured it, recover.

3. The policy being a valued policy, the plaintiffs may recover on the goods lost the whole sum at which their interest in them was valued, unless such valuation was fraudulently excessive.

4. The plaintiffs might fairly value their interest at the whole price of the goods, if what did not belong to them had been purchased on their credit, or they had incurred expenses for or liabilities upon it.

5. If, of the three members of the house of Winter, Latimer & Co., two were also members of the house of Norris & Co., the consignees, and the cargo belonged all of it to those two houses, which between them purchased and were about to sell, or otherwise deal with it for commercial profit, the insurance in the name of Winter, Latimer & Co. is good for the purposes of recovering of the whole loss.

6. A partner of a commercial house may recover for goods belonging to the house on a policy effected in his individual name.

II. *Plaintiffs' right to recover as for total loss of cargo without abandonment.*

1. They may so recover if the jury find that there was no possibility of sending on the cargo to its port of destination, by reason of there being no vessel to carry it.

2. They may so recover if the jury find that the cargo was so damaged as not to be able to bear being reshipped and carried forward.

III. *Total loss and abandonment.*

1. If the plaintiffs recover as on total loss and abandonment, they are entitled in addition to and beyond the sum insured, to any general average expenses paid by them on the portion of the vessel and cargo, which by the act of abandonment passed to the defendants.

IV. *Plaintiffs' right to recover as for a partial loss with salvage.*

1. Plaintiffs may recover for partial loss on the vessel if they show by evidence what would have been the cost of the necessary repairs, and their damages will be accordingly in other words, what the damage was without resort to a sale to fix it.

[Delaware Insurance Co. *v.* Winter, Latimer & Co..]

2. They may recover for a partial loss on the cargo, if the jury find that the sale of the cargo was demanded by the interest of all concerned, and was not merely to fix the damage.

3. If a single package only of the cargo had been so sea-damaged as to make a sale of it at Rio advisable for the benefit of all concerned, the case would have been one of partial loss; and it is the same case when any number of packages or all of them were so damaged and so sold.

4. If the jury find that $2715.26, or any other amount of invoiced items which do not appear in the accounts of sales were lost by the perils insured against, they may find a partial loss to such sum on the cargo.

V. *Clause of policy as to separating parcels for sale.*

1. It applies only where a sale of all parts of the cargo is not justifiable, and is not to take place. If a total loss is to be made, and the whole cargo to be sold, it has no application, although the loss on this or that package be partial only.

2. It has no application where, whether to make a total or a partial loss, the master, in the honest exercise of his discretion, has deemed it for the interest of all concerned to sell the whole cargo, the voyage being broken up.

3. Where it does apply, the jury is to judge how far it is practicable to separate the packages into damaged and undamaged portions where they did not contain dry goods, cutlery, or other hardware.

4. When it does apply, the jury is to judge how far it is practicable to separate the packages into damaged and undamaged portions, whatever they contained.

5. If it applied here, and the master has not complied with it, he was the agent of the defendants as well as of the plaintiffs, and the plaintiffs cannot be barred by his non-compliance from estimating their damages otherwise than by separating packages into damaged and undamaged parts, if there is the means of estimating them in the evidence.

6. If it applies, it is but a mode of ascertaining damages, and the defendants cannot complain if the jury think that opening the packages would have only increased expenses, and that they can assess damages under the evidence as justly towards the defendants as if the packages had been opened.

The points propounded by the defendants, as above stated, were answered by the learned judge, as follows:

The first was affirmed, with this reservation—"unless the plaintiffs and defendants afterwards treated the abandonment as withdrawn, waived, or otherwise invalid."

The second was affirmed, "if the facts were as stated in the point."

All the other points propounded by defendants were negatived except the eleventh, which was affirmed.

In answer to plaintiffs' points: Class 1. The first, fourth, fifth, and sixth, were negatived by the learned judge, and the second and third affirmed, with these restrictions.

"The plaintiffs can recover, only according to the extent of their legal or equitable interest or title. It may be, that the whole interest is theirs. If they bought the cargo, without an order for it from the Portland house, and sent it in their own ship, then it was theirs until actually accepted as a sale by the consignors, or if they merely consigned it for sale, it was theirs, or if they bought it with their own money and sent it as a sale, they had a right of stoppage *in transitu*, if the consignors failed before receiving the goods. You will judge what the facts are. I know not how the evidence is."

As to Class 2, Nos. 1 and 2, he said: "I refuse so to charge, but if the jury find that after the second injury to the vessel, there was no possibility of sending on the cargo to its place of destination, or that it was so damaged that it would not bear being reshipped, then the plaintiffs had a right to abandon it and look to the defendants as for a total loss."

Class 3, point No. 1 was affirmed.

Class 4, Nos. 1, 2, 3, and 4 affirmed.

Class 5—As to point No. 1 the learned judge said: "This is true, so far as relates to the contract for making such separation, but the principle has some application independently of contract. It is the duty of the insured, and of their servants who have the property insured in their custody, to exert their utmost care and ordinary skill in a case of abandonment, to save as much as possible of the property, and make it bring as much as possible for the insurance. It may be their duty to separate the articles in disposing of them, or to store them, or to send them home, and if any such duty is neglected or carelessly performed, this fact may furnish ground for a claim of damages to be deducted from the policy. You will judge from the evidence how these facts are, and what duty arose from them."

As to point No. 2, he said: "This is true of the insured and the master, they being still subject to the same duty of care and skill as I have just described."

And as to points Nos. 3, 4, 5, and 6, he said: "The above principles sufficiently dispose of these points."

The jury found for plaintiffs for the full amount of the partial loss to the vessel arising from the first disaster; and for a subsequent total loss of same, less proceeds of sale. Also for total loss of cargo, less proceeds of sale. Judgment being entered on this verdict, the case was certified to the court in banc, where

[Delaware Insurance Co. v. Winter, Latimer & Co.]

the following matters were assigned for error by the defendants in the suit:—

1. The judge who tried the cause erred in not saying, in answer to the first point of defendants, that the plaintiffs could not recover for any loss on the vessel after the abandonment of September 15th 1851, and in adding in answer to said point that the same was true, unless the defendants and the plaintiffs afterwards treated the abandonment as withdrawn, waived, or otherwise invalid; whereas there was no evidence in the cause that the said abandonment had been so treated by the parties.

2. In not affirming defendants' third, fourth, fifth, sixth, seventh, eighth, ninth, tenth, and thirteenth points; and in saying, in answer to the plaintiff's second point under Class 5, that "the clause in the policy providing for the separation of the damaged portions of packages of goods from the undamaged has no application where, whether to make a total or a partial loss, the master, in the honest exercise of his discretion, has deemed it for the interest of all concerned to sell the whole cargo, the voyage being broken up," notwithstanding that he added "the insured and the master being still subject to the same duty of care and skill as I have just described." What the learned judge had just described was in answer to plaintiff's first point in same class, as above stated.

*George M. Wharton* and *John Hill Martin*, for plaintiffs in error.—1. As to the right to abandon under the circumstances, and its effect, referred to in the first assignment of error, cited and relied on Pele v. Merchants' Ins. Co., 2 Mason 27; 2 Phillips on Insurance, §§ 1705, 1712; Arnould on Insurance 997, 999.

2. As to the rule that where there is not an *actual* total loss, and the insured claims to recover on the footing of a *technical* total loss, the damage which will justify an abandonment must exceed 50 per cent. of the value of the goods, which was involved in the third, fourth, and fifth points, they cited 2 Arnould on Insurance 1001, 1129; 2 Phillips on Insurance, § 1535; 3 Kent, 7th ed., 404; Budd v. Union Ins. Co., 4 McCord 1; Hall v. Ocean Ins. Co., 21 Pickering 472; Peters v. Phœnix, 3 S. & R. 25. And as to the mode of calculating an actual loss under a valued policy, Lewis v. Rucker, 2 Burr. 1167–68.

3. As to the sale of ship and cargo by the master, referred to in the sixth, seventh, eighth, and ninth points, they cited Meyers v. Baymore, 10 Barr 120; 2 Arnould 1131, 1137, 1143; 2 Phillips, §§ 1565, 1568; Freeman v. East India Co., 5 B. & Ald. 617; Bryant v. Com. Ins. Co., 13 Pickering 543; Meyers v. Baymore, 10 Barr 119; Morris v. Robinson, 3 B. & C. 196; Cannon v. Meaburn, 1 Bingham 243.

[Delaware Insurance Co. *v.* Winter, Latimer & Co.]

4. As to *memorandum* articles, referred to in the tenth point, they cited Stevens & Benecke on Average 427 ; 2 Phillips 328, § 1615; Marean *v.* U. S. Ins. Co., 3 W. C. C. R. 250; Cocking *v.* Fraser, 4 Doug. 295; Park on Insurance (8th ed.) 247 ; 2 Arnould on Insurance 1026 ; 3 Kent (5th ed.) 295 ; Hugg *v.* Augusta Ins. Co., 7 Howard 595.

5. That the primary fund for the payment of a bottomry bond is the vessel, as stated in the twelfth and thirteenth points, they cited The Packet, 3 Mason 255; The Gratitudine, 3 C. Robinson 263; The Dawthrope, 2 Wm. Robinson 85. And they argued, further, that the clause in the policy as to a separation of portions of the cargo in order to their examination was unambiguous, and applied as a matter of contract to every case of partial loss, the object being to exclude the master's discretion in judging as to the propriety of selling a whole cargo or not.

*C. Ingersoll*, for defendants in error.—If there be evidence to sustain the verdict as on a total loss and abandonment, all the points of defendants on which errors have been assigned, except the thirteenth, are disposed of, and the judgment ought to be affirmed, even though there was a mis-instruction on all the points which refer themselves to a salvage loss, because a judgment will not be reversed for error on immaterial points : Wolverton *v.* Commonwealth, 7 S. & R. 273 ; Johnston *v.* Brackbill, 1 P. R. 364 ; Brady *v.* Calhoun, Id. 370 ; Strawbridge *v.* Cartlege, 7 W. & S. 394 ; Unangst *v.* Kraemer, 8 W. & S. 391 ; Miles *v.* Stevens, 3 Barr 21 ; Ely *v.* Hager, 3 Barr 154; Hulings *v.* Guthrie, 4 Barr 123 ; Gilpin *v.* Howell, 5 Barr 41 ; Schoneman *v.* Fegley, 2 Harris 376 ; Schmoyer *v.* Schmoyer, 5 Harris 520; Phelin *v.* Kenderdine, 8 Harris 362; Irvine *v.* Trego, 10 Harris 368; Cole *v.* Bolard, 10 Harris 431; Evans *v.* See, 11 Harris 88; Bunce *v.* Stamford, 3 Casey 267 ; Johns *v.* Battin, 6 Casey 87 ; Graff *v.* Pittsburgh Railroad Co., 7 Casey 496–7 ; Burkholder *v.* Lapp, Id. 324; Brewster *v.* Sterrett, 8 Casey 118 ; Lacy *v.* Arnett, 9 Casey 174; Franciscus *v.* Reigart, 4 Watts 98; Peterson *v.* Speak, 5 Casey 493.

Nor does defendants' thirteenth point, as presented by him in the assignments of error here, affect the case; for, admitting the correctness of the position there taken, it is not applicable. The holder of the bottomry bond considered it cancelled on the return of the Orb to Rio, and acted accordingly. In the adjustment of loss as submitted to the jury, there is no charge to the cargo of losses on the vessel. Even if the holder was moved, in ordering the sales, by a desire to collect his debt, the defendants went to the jury on the question of the sale being unnecessary and waste-

[Delaware Insurance Co. v. Winter, Latimer & Co.]

ful, and thus had the benefit of all the evidence on that point, if there was any. It was not a point on which instruction could have been asked by defendants, because plaintiffs did not claim to recover against the insurers of the cargo for loss on the vessel; and if the instruction was to bear on the motive of Wright, Maxwell & Co. in ordering the sale, the defendants ought to have asked instructions making the motive bear on the validity of the sale, and not on a claim which was never made by plaintiffs below. Admitting the motive to be as imputed, there had been an abandonment for a total loss, and Wright, Maxwell & Co. were agents of defendants and not of plaintiffs: Phillips on Insurance, ch. xvii., § 16. After reviewing *seriatim* the points submitted by the defendants to the judge at Nisi Prius, the learned counsel argued—

1. That the sale of the cargo was justifiable; citing 1 Arnould 187; Phillips, p. 192; 3 Eng. C. L. Rep. 69; 2 Sumner 215, 216; and 3 Rob. Rep. 240.

2. That, without *abandoning*, plaintiffs could not recover as for a total loss, and here was an actual total loss in which an abandonment was not necessary, for there was nothing to abandon—the loss was total, not merely in peril; that whether they proceeded for a partial or total loss, the effect on them was the same. If they claim a total loss, they give credit for salvage; if partial, they ask a sum bearing the same proportion to the sum insured which the value lost bears to that at risk; the result is the same in both cases. Abandonment when not necessary is objectionable; it never benefits the underwriter, and is only allowable in a case like this for the purpose of showing whether plaintiffs claim for a total or partial loss: Roux v. Salvador, 3 Bing. N. C. 266; 32 Eng. C. L. 110; Arnould 992, 1000, 1001, 1004. As plaintiffs could have recovered for a partial loss to the extent of $2715.26, the learned judge at Nisi Prius could not have affirmed defendants' eighth point. The record does not bring this case within the doctrine of Watson v. The Insurance Co. of N. A., 1 Binn. 47.

As to the memorandum article he cited 2 Arnould 851–2; and argued, with regard to that assignment of error, that the clause in the policy as to a separation of the damaged from the undamaged articles, was applicable only to cases of partial loss by sea damage, and when a sale of the damaged portion only is to be made.

The opinion of the court was delivered, February 4th 1861, by

THOMPSON, J.—This was an action to recover an insurance of the schooner Orb and cargo, on a policy for a voyage from Baltimore to Portland, Oregon, in May 1851. In December 1851 the vessel put into the port of Rio in distress, and was, with the cargo, abandoned to the underwriters as for a total loss. The

[Delaware Insurance Co. *v.* Winter, Latimer & Co.]

assignments of error upon instructions to the jury are numerous, and have been most elaborately and ably argued on both sides. The discussion has served to point attention to the material questions raised, and these alone we shall proceed to notice.

1. We think there was no error in the answer to the defendants' first point. A mere notice of abandonment without actual abandonment amounted to nothing. Both parties acted as if no actual abandonment had taken place. If the facts did not justify it, the assured would be no more bound by it than the underwriters. And that the latter are not, when the laws of commerce do not justify it, is a subject of too familiar practice to need argument to prove. No right could accrue to the insurers until actual abandonment. This, the plaintiffs say, did not take place anterior to their notice of the 15th September 1851, nor in consequence of the injury sustained, of which notice was predicated; and the defendants did not attempt to prove that it did. Nor did they at the time do any act or thing showing an acceptance of abandonment, even if it had been justifiable. Under the circumstances they could not hold the other party bound, if he chose to waive it. Here, however, it was not claimed that there was cause for, and much less an actual abandonment.

2. The second, third, and fourth errors were considered together in the argument, and we will notice them in the same order.

It was objected that the court refused to charge that the facts did not justify an abandonment of the ship and cargo on December 6th 1851. The objection made does not appear to be on account of the actual condition and circumstances of either; but because it was not shown, that the marine test of sea damage to the extent of 50 per cent. existed. The defendants took no testimony on that point, and were forced to rely on the chances of deficiency in the plaintiffs' case. But, in regard to this matter of 50 per cent. damage, it seems to us they were under some misapprehension. The rule is applicable to deterioration from what is called sea damage; that is to say, by wetting, leakage, and the like, and is so treated and spoken of by writers on the subject: 3 Kent 329; Seton *v.* Delaware Ins. Co., Wash. C. C. Rep. 175; 1 Arnould 199, note 1; and not to cases of actual or constructive total loss.

The same principle in substance prevails as to a vessel, but is differently stated; that is to say, when the costs of repair exceed the one-half of its value, it may be treated as for a total loss.

In the case in hand, it appeared that the schooner Orb, having encountered severe gales and continued rough weather in the neighbourhood of Cape Horn, was so much damaged as to be obliged to put back in distress to some port of safety. Under these circumstances she arrived in the port of Rio in October 1851. After a survey held, she was condemned as wholly unsea-

[Delaware Insurance Co. v. Winter, Latimer & Co.]

worthy; not worth repairing, and recommended to be sold. That this was a case for abandonment as for a total loss of the vessel, is certain, and is not disputed here.

It was also in proof that the cargo, an assorted one, containing fruits, fish, oysters, and many other perishable articles, was much deteriorated, and on a survey at the request of Maxwell, Wright & Co., was recommended to be sold. Furthermore it appeared that no shipment, either in whole or in part, of the cargo could be had from the port of Rio to Portland, Oregon, the place of its destination. This, the plaintiffs contended, was a proper case for abandonment; not on the principle, however, of sea damage to the cargo, but upon a principle which they claim justifies it without this element. Was it a case, therefore, for abandonment as for a total constructive loss? That it was, I think the authorities will abundantly show. I will proceed to cite a few of them.

In the celebrated case of Roux v. Salvador, 3 Bing. N. C. 266, Lord Abinger said, "If, in the progress of the voyage, it (the cargo) becomes wholly destroyed and annihilated, or if it be placed, by reason of perils against which he insures, in such a position that it is wholly out of the power of the insured or underwriter to procure its arrival, he is bound, by the very letter of his contract, to pay the sum insured."

So in Kent, vol. 3, p. 328, it is said that "if the ship be prevented by a peril within the policy from proceeding on her voyage, and be irreparably injured, and the voyage be thereby lost, it is a total loss of ship, freight, and cargo, provided no other ship can be procured to carry on the cargo." To the same effect is 1 Arnould 990, 2 Id. 2008; and this is believed to be the current of authorities without exception.

Under this state of facts the plaintiffs say they were induced to abandon the cargo as for a total loss. It is apparent, therefore, that the abandonment was dependent on the facts under this view of the law, and they were of course for the jury. The judge was right, therefore, in refusing to charge as requested; for it would have been error in law as well as an invasion of the province of the jury so to have done.

3. The next point relates to the acts of the master in regard to the sale of the cargo; but we do not exactly see how the point arises in this case. The sale took place some considerable time subsequent to the abandonment, and as this operated as a cession or transfer of the cargo to the underwriters, if that were valid, it is not easy to see how a retrocession from any act of his in making a sale could take place. The acts of the master are usually scrutinized with a view to the question of salvage, and if contrary to good faith or the exercise of sound discretion, they may operate on the question of abandonment. Here, then, if

the abandonment was complete, the subsequent acts of the master could not deprive the insured of the benefits resulting from it; he was thenceforward the agent of the underwriters, and bound to use diligence, skill, and care towards the interests of all concerned. But, in whatever aspect we may view the point, to have instructed as requested, would have been error.

As we have already said, the justification of abandonment did not depend on sea damage strictly so called, but upon other facts and principles: the propriety of the sale under the circumstances was dependent on the facts, and these were for the jury, and properly so left to them. We see no error, therefore, in this part of the case.

4. The next assignment of error is upon the ruling of the court below in regard to memorandum articles. The memorandum clause in policies of insurance provides an exemption from liability unless the damage amount to a certain specified sum, and stipulates that certain articles shall be free of general average, except in particular cases of injury, such as stranding. It exists in this policy, and under the clause the defendants claim to be exempt from liability because the loss was not from stranding. It is well known that the practical use of the clause is to operate on certain goods more susceptible of sea damage than others. Goods so susceptible, are so well known, and the ordinary injuries from sea damage so easily estimated, that insurers do not take the risk of all damage, and hence they usually fix a limit below which they will not be answerable. The usage is universal both in Europe and America, with but slight differences in form or substance. It is apparent from this statement in regard to the use and object of the memorandum clause, that its application is to partial and not total loss.

Kent states the rule to be that "if there be a total loss of the voyage by reason of shipwreck or any other casualty, and there be no other means to forward the cargo, there is no distinction between the memorandum articles and the rest of the cargo. The total loss applies equally to the whole:" 3 Kent 297. For this many authorities are cited. So in the French Code, Article 409, the insurer is exempt under the clause "free from average for all partial losses, *except in cases which authorize an abandonment;* and in such cases the insured has the option between the abandonment and the claim for average loss."

In 2 Arnould 1026 it is laid down that "it is not, however, to be concluded on this account" (the operation of the clause in question) "that a total loss on articles free of average is a different thing from a total loss on other perishable goods not so insured; the contrary is the case." See authorities cited in note 1, same page.

"In all cases, in fact," says the same authority, "except those

[Delaware Insurance Co. *v.* Winter, Latimer & Co.]

of partial loss, the goods comprised in the memorandum stand on the same footing as other goods. If the question turn on a totality of the loss, there is no difference between them and other perishable articles." "Whether the loss be total or partial in its nature must depend on general principles. The memorandum does not vary the rules upon which a loss is partial or total. It does no more than preclude indemnity for an ascertained partial loss:" Poole *v.* Protection Ins. Co., 14 Conn. 47.

In Marcan *v.* United States Ins. Co., 3 Wash. C. C. Rep. 256, the doctrine is stated thus: "If the question turn on the totality of loss unconnected with the subject of loss by deterioration of the cargo in value or reduction in quantity, there is no difference between memorandum and other articles. If the loss be total in fact, or is *such as the insured is permitted to treat as such,* he is entitled to abandon and to recover as for a total loss, in the case of memorandum articles: but always with this exception, that he is not permitted to turn a partial into a total loss."

The rule, therefore, deducible from these and many other authorities, is that wherever the cargo may, on account of injuries from perils insured against, be abandoned as for a total loss, memorandum articles stand upon the same footing as others. There is much diversity on the subject of deterioration of this class of articles and the effect of a total change of their character, although they remain nominally in specie the same, as incurring liability on part of the insurers. But, as that question does not properly arise here, we express no opinion on the subject. We do not think the assignment of error thus noticed is sustained, and accordingly we overrule it.

5. We do not see any practical difficulty under the next assignment, because the loss of both vessel and cargo may be treated as total, the evidence being believed and both belonging to the same party. The doctrine of contribution in payment of the bottomry bond, does not arise in that form here in which it might, and undoubtedly would, in cases of partial loss or between separate owners.

6. Neither is the remaining assignment sustained. It was truly said by the counsel for the defendants in error, that the provision in a policy for ascertaining the loss by a separation of damaged from undamaged articles, applied only to the cases of partial, not to a total loss, constructive or absolute; for so it expressly appears in the conditions attached to the policy. Discovering no error in any part of this record, the judgment is affirmed.